CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
07/08/2019
JULIA C. DUDLEY, CLERK
BY: /s/ J. JONES
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

HANOVER INSURANCE CO.,

    *Plaintiff*,

v.

CASTLE HILL STUDIOS, LLC, *ET AL.*,

    *Defendants*.

CASE NO. 3:18-cv-00072

MEMORANDUM OPINION

JUDGE NORMAN K. MOON

This matter is before the Court upon Plaintiff Hanover Insurance Company's ("Hanover") motion for partial summary judgment, (dkt. 40), and Defendants Castle Hill Studios LLC, Castle Hill Holding LLC, and Ironworks Development LLC's ("Castle Hill") cross-motion for partial summary judgment. (Dkt. 53). Hanover filed an action for declaratory judgment pursuant to 28 U.S.C. § 2201, seeking declarations that it has no duty to defend or indemnify Castle Hill in an underlying trademark infringement suit pending in the Northern District of Oklahoma ("underlying action").[1] The parties agreed to stay all issues pending resolution of the underlying action except one: whether Hanover must indemnify Castle Hill under three primary businessowners policies or whether exclusions for "personal and advertising injuries" apply.

Hanover moves for partial summary judgment, arguing it is entitled to a declaratory judgment that the businessowners policies exclude "personal and advertising injury," and that Castle Hill is therefore not entitled to coverage in the underlying action under these policies. Castle Hill contends that the businessowners policies are ambiguous on this issue because, although one provision purports to exclude advertising injury coverage, other conflicting

---

[1] The remaining defendant—Video Game Technologies—is the plaintiff in that suit against Castle Hill. Video Game Technologies took no position on the present motions. (Dkt. 52).

1

exclusions and endorsements appear to provide for such coverage. (Dkt. 53). Castle Hill cross-moves for partial summary judgment, arguing it is entitled to a declaration that Hanover has a duty to indemnify Castle Hill under the businessowners policies. (*Id*. at 5).

The Court finds that the businessowners policies unambiguously exclude coverage for personal and advertising injury. Accordingly, the Court will grant Hanover's motion for partial summary judgment and deny Castle Hill's cross-motion for partial summary judgment.

### I.   LEGAL STANDARD

"Summary judgment is particularly well-suited for resolution of insurance coverage disputes because the construction of insurance contracts is a legal question." *Mount Vernon Fire Ins. Co. v. Adamson,* No. 3:09-cv-817, 2010 WL 3937336, at *1–2, (E.D. Va. Sept. 15, 2010) (citations omitted). Fed. R. Civ. P. 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). The nonmoving party must "show that there is a genuine dispute of material fact for trial . . . by offering sufficient proof in the form of admissible evidence." *Id.* (quoting *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016)). The district court must "view the evidence in the light most favorable to the nonmoving party" and "refrain from weighing the evidence or making credibility determinations." *Id.*

## II     Factual Background & Legal Principles

A.     Factual Background[2]

Video Game Technologies, Inc. and Castle Hill are "competitors in the Native American bingo-based gaming market." (Dkts. 41 at 1; 41-1 ¶ 2). In August 2017, Video Gaming Technologies sued Castle Hill in the Northern District of Oklahoma for, among other things, trademark and trade dress infringement[3] stemming from "class II bingo-based games" developed by Castle Hill with features closely resembling games produced by Video Game Technologies. (Dkt. 41-1). Castle Hill tendered the underlying action to Hanover for defense and indemnity, and "Hanover admits it accepted the duty to defend under certain of the Umbrella policies" discussed below "under a full reservation of rights." (Dkt. 56 at 6).

From 2014 to 2017, Hanover insured Castle Hill via primary businessowners policies with collective coverage limits of $3,000,000 and, starting in 2015, via umbrella policies with collective coverage limits of $3,000,000. (Dkts. 41-3; 41-4; 41-5; 41-6).

Section II of the businessowners coverage form provides, in pertinent part, that Hanover will defend the insured "against any 'suit' . . . damages" for "'bodily injury,' 'property damage,' or 'personal and advertising injury' to which this insurance applies," and indemnify the insured for any damages in such suits. The policy provides that it applies to "'personal and advertising

---

[2]     Although Castle Hill raises some additional facts about the parties' negotiations prior to the issuance of the policies, it did not dispute most of the facts Hanover raised in its motion. Accordingly, the facts raised by Hanover will be treated as undisputed. *See* Fed. R. Civ. P. 56(e)(2) (stating that where a "party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed").

[3]     Video Game Technologies brought claims under the Lanham Act, Oklahoma Deceptive Practices Act, and Oklahoma Uniform Trade Secrets Act, as well as common law claims of trademark infringement and misappropriation of confidential business information. (Dkt. 41-1). Castle Hill does not dispute that the underlying action alleges harms that qualify as "personal and advertising" injury under the businessowners policies.

injury' caused by an offense arising out of your business, but only if the offense was committed in the 'coverage territory' during the policy period." The policy defines "personal and advertising injury" as "injury, including consequential 'bodily injury', arising out of . . . "[t]he use of another's advertising idea in our 'advertisement'; or . . . "[i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement.'" (*See, e.g.,* dkt. 41-3 at 69, 84–85).

Section II of the businessowners coverage form is amended by the "advertising injury exclusion," which reads, in pertinent part: "The following is added to **Section II – Liability** and supersedes any provision to the contrary: The insurance provided under Paragraph **A. Coverages** does not apply to 'personal and advertising injury.'" (Dkt. 41-7). The businessowners policies were also contemporaneously amended by other exclusions and endorsements, some of which mention personal and advertising injury. The parties now dispute whether these other provisions render the policies ambiguous with respect to coverage for personal and advertising injury.

B. **Virginia Contract Interpretation Principles**

Under Virginia law,[4] courts are to construe insurance policies according to standard principles of contract interpretation. "Virginia strictly adheres to the 'plain meaning' rule: 'where an agreement is complete on its face and is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself . . . because the writing is the repository of final agreement between the parties." *Firemen's Ins. Co. of Washington, D.C. v. Kline & Son Cement Repair, Inc.*, 474 F.Supp.2d 779, 788 (E.D. Va. 2007) (quoting *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 405 (4th Cir. 1998)).

---

[4] The parties agree that the Court should apply Virginia law. "Under Virginia law, a contract is made when the last act to complete it is performed, and in the context of an insurance policy, the last act is the delivery of the policy to the insured." *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) (citing *Buchanan v. Doe*, 431 S.E.2d 289, 291 (Va. 1993)). The insurance policies here were delivered to Castle Hill in Virginia, where Castle Hill has its principal place of business.

"Exclusionary language in an insurance policy will be construed most strongly against the insurer and the burden is on the insurer to prove that an exclusion applies." *Granite State Ins. Co. v. Bottoms*, 415 S.E.2d 131, 134 (Va. 1992). "Reasonable exclusions not in conflict with statute will be enforced, but it is incumbent upon the insurer to employ exclusionary language that is clear and unambiguous." *Id*. Contractual language is ambiguous "when it may be understood in more than one way or when it refers to two or more things at the same time." *Id*. "[A]mbiguous language in an insurance policy will be given an interpretation which grants coverage, rather than one which withholds it." *Id*.

When interpreting an insurance policy, "courts must not strain to find ambiguities . . . or examine certain specific words or provisions in a vacuum, apart from the policy as a whole." *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co*., 407 F.3d 631, 636 (4th Cir. 2005) (collecting Supreme Court of Virginia decisions). "Each component of an insurance contract 'should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done, so as to effectuate the intention of the parties as expressed therein.'" *Transcon. Ins. Co. v. RBMW, Inc*., 551 S.E.2d 313, 318 (Va. 2001) (quoting *Suggs v. The Life Ins. Co. of Va.,* 147 S.E.2d 707, 710 (Va. 1966)).

### III. ANALYSIS

In arguing that the businessowners policies plainly exclude "personal and advertising injury" from coverage, Hanover points to the aforementioned advertising injury exclusion and that exclusion's language purporting to supersede all contrary provisions. (Dkt. 41-7). Castle Hill contends that the businessowners policies are ambiguous because, in addition to the exclusion Hanover relies on, the policies also include contemporaneously-adopted "endorsements that expand. . . and provide for advertising insurance." (Dkt. 53 at 2). Thus,

5

Castle Hill argues that the Court should grant partial summary judgment in its favor, since Virginia law requires that ambiguities be resolved in favor of the insured. (*Id*. at 20). *See Lower Chesapeake Assoc. v. Valley Forge Ins. Co.*, 532 S.E.2d 325, 331–32 (Va. 2000) ("If exclusionary provisions are ambiguous, such that they may be understood in more than one way, we will interpret the policy in a manner that provides coverage.").

For the reasons that follow, the Court finds that the businessowners policies are not ambiguous and that the businessowners policies plainly do not cover personal and advertising injury like that alleged in the underlying action.

### A. Consideration of Businessowners' Quote Proposal

The Court first addresses a threshold question: whether to consider evidence submitted by Castle Hill related to the parties' initial negotiations. Specifically, Castle Hill's statement of facts notes that: (1) Castle Hill applied for insurance from Hanover, seeking coverage for risks including "advertising injury liability," and Hanover issued a 36-page "Businessowners' Quote Proposal" offering a policy with certain limits and exclusions for a premium of $861.00; (2) the quote proposal provided for advertising insurance, and included a "Special Broadening Endorsement" that broadened advertising insurance "by including coverage for 'Broad Form Personal & Advertising Injury ([which] includes discrimination or humiliation that injures feelings or reputation if not intentional or directed & not related to employment)'"; and (3) the quote proposal specified that the $861.00 premium included a surcharge for this "Special Broadening Endorsement." (Dkts. 53 ¶¶ 1–7; 54-5).

Hanover objects to any consideration of the quote or surrounding negotiations, arguing that these materials are "inadmissible parol evidence" under Virginia law and pointing to the

6

businessowners policies' "Common Policy Conditions," which state that the "policy contains all the agreements between" the parties. (Dkt. 56 at 2).

Hanover is correct that the quote at issue is parol evidence, since it is extrinsic to the businessowners policies. *See Builders Mut. Ins. Co. v. Parallel Design & Dev. LLC*, 785 F.Supp.2d 535, 548 (E.D. Va. 2011).[5] Moreover, Hanover is correct that consideration of the quote would be inappropriate. "[T]he general rule in Virginia is 'that insurance contracts, like other contracts, generally are to be construed according to their terms and without reference to parol evidence,'" which should only be considered when the policy is ambiguous. *Id.* at 549 (quoting *S. Ins. Co. v. Williams*, 561 S.E.2d 730, 733 (Va. 2002)). As discussed below, the Court finds that the businessowners policies are not ambiguous but rather plainly exclude personal and advertising injury from coverage. Thus, consideration of any parol evidence would be inappropriate. *See Evans v. GEICO Gen. Ins. Co.*, No. 3:14-cv-659, 2015 WL 137269, at *6 (E.D. Va. Jan. 9, 2015) (noting that, under Virginia law, "[w]hen the language of a written instrument . . . is clear on its face, parol evidence is not considered, and the document is read within the four corners").

### B. Whether Businessowners' Policy is Ambiguous

The primary question for the Court is whether the businessowners policies unambiguously exclude personal and advertising injury, or whether the policies' various exclusions and endorsements referencing such coverage render the policies ambiguous. Castle Hill argues that the policy is ambiguous because, although the policy does contain the advertising injury exclusion purporting to supersede any provision to the contrary, it also contains a series of exclusions and endorsements that mention personal and advertising injury

---

[5] Under Virginia law, "the parol evidence rule is a rule of substantive law rather than a rule of evidence." *Zehler v. E.L. Bruce Co.*, 160 S.E.2d 786, 787 (Va. 1968).

7

coverage. Castle Hill also argues that various canons of construction—namely, the "no provision ignored" doctrine, the "concurrent, contradicting endorsements" doctrine, and the "drafting exclusions" doctrine—require that the Court resolve the alleged ambiguity in favor of the insured. (Dkt. 53 at 6).

The Court holds that the businessowners policies plainly and unambiguously exclude personal and advertising injury, and that Hanover therefore is under no obligation to indemnify Castle Hill for such injury in the underlying action. Although Castle Hill points to other endorsements and exclusions mentioning coverage for personal and advertising injury, the contemporaneously-added advertising injury exclusion plainly removes personal and advertising injury from the businessowners policies' ambit. (Dkt. 41-7 at 2). Most importantly, this exclusion "*supersedes any provision to the contrary*," including the supposedly conflicting endorsements and exclusions Castle Hill relies on. (*Id*.). Castle Hill points to no similar language purporting to supersede all other provisions in the other endorsements and exclusions, and an independent review of these provisions reveals no such language. (Dkt. 54-3 (collecting the various endorsements and exclusions at issue)). Accordingly, based on a plain reading of the advertising injury exclusion, the Court holds that the businessowners policies do not cover personal and advertising injury.

### 1. Other Exclusions & Endorsements

In attempting to show ambiguity in the businessowners policies, Castle Hill first points to seven other exclusions for various types of coverage that mention "personal and advertising injury insurance." (Dkts. 53 at 9–10; 54-3). For instance, the "Asbestos Liability Exclusion" excludes asbestos-related injuries from coverage under any "personal and advertising injury"

insurance, and the "Employment-Related Practices Exclusion" excludes insurance for "personal and advertising injury" arising out of employment-related decisions. (*Id*.).

For several reasons, these exclusions' mentions of "personal and advertising injury" is insufficient to create any genuine ambiguity in the businessowners policies. First, exclusions cannot create or extend coverage. *See Nationwide Mut. Ins. Co. v. Wenger*, 278 S.E.2d 874, 876 (Va. 1981) (noting that an exclusion "does not extend or grant coverage" but "[t]o the contrary" acts as "a limitation or restriction on the insuring clause"); *see also Travelers Indem. Co. of Am. v. Miller Bldg. Corp.*, 142 F. App'x 147, 150 (4th Cir. 2005) (noting same); *Erie Ins. Exch. v. Salvi*, No. CL12-379, at *4 (Va. Cir. Ct. Jan. 10, 2013) (same). Thus, the mere mention of "personal and advertising injury" in an exclusion cannot create such coverage. Second, none of these exclusions contains any language like the advertising injury exclusion purporting to supersede all conflicting provisions. Thus, even assuming *arguendo* that these exclusions created coverage for personal and advertising injury, such coverage would be extinguished by the advertising injury exclusion and that exclusion's plain language superseding conflicting provisions.

In addition to these exclusions, Castle Hill contends that three endorsements to businessowners policies render the policies ambiguous: (1) the businessowners liability special broadening endorsement, which, among other things, limits "personal and advertising injury" coverage to certain kinds of contractual relationships and expands the definition of "personal and advertising injury" in the base policy, (dkt. 54-3 at 2); (2) the "'Your Product' and 'Your Work' Coverage Endorsement," which excludes certain kinds of professional services related to coverage but does not apply that exclusion to insurance for "personal and advertising injury" arising of 'your product' or 'your work'," (dkt. 54-3); and (3) an endorsement noting that the

"most [Hanover] will pay for the sum of all damages because of 'personal and advertising injury' . . . is the same as the Business Liability Limit shown in the Declarations." (*Id*.).

Unlike exclusions, these endorsements *could* theoretically create or extend coverage. Nevertheless, these endorsements do not render the businessowners policies ambiguous with respect to "personal and advertising injury" coverage. This is so because, unlike the advertising injury exclusion, none of these endorsements purport to supersede any conflicting provision. Indeed, the businessowners' liability special endorsement states that it is "subject to provisions applicable to the businessowners coverage form," which would include the advertising injury exclusion. (Dkt. 54-3 at 2). Thus, the advertising injury exclusion's clear statement that it supersedes any conflicting provision trumps these endorsements' references to "personal and advertising injury" coverage.

### 2. Castle Hill's Arguments Regarding Canons of Construction

Castle Hill raises three unavailing arguments that reading the businessowners policies as Hanover suggests violates basic principles of contract interpretation.

First, Castle Hill argues that Hanover's reading violates the "no provision ignored doctrine," under which "[n]o word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it." *TravCo Ins. Co. v. Ward*, 736 S.E.2d 321, 325 (Va. 2012) (noting that "there is a presumption that the parties have not used words needlessly," and that "[e]ach phrase and clause of an insurance contract should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done"). Castle Hill argues that if the advertising injury exclusion is read to "exclude *all* Advertising Insurance in the Policy," then the Court would necessarily be ignoring the other endorsements noted above that "explicitly *broaden*[] 'personal and advertising injury' liability coverage" and

10

"affirmatively *provide*[] for coverage for advertising injury liability damages," as well as other provisions that "mention 'advertising injury.'" (Dkt. 53 at 12 (emphasis in original)).

This argument fails, as Hanover's interpretation of the policies prevails even when considering all of the exclusions and endorsements together: the advertising injury exclusion plainly excludes "personal and advertising injury" coverage, and supersedes any contrary provision; all other provisions proffered by Castle Hill that do mention such coverage or purport to broaden it are thus displaced by the advertising injury exclusion. Indeed, it is Castle Hill's interpretation that would run afoul of the so-called "no provision ignored" doctrine, as Castle Hill would have the Court essentially ignore the language in the advertising injury exclusion explicitly superseding "any provision to the contrary." (Dkt. 41-7 at 2).

Second, Castle Hill contends that Hanover's interpretation of the businessowners policies violates the "concurrent, contradicting endorsements" doctrine, which maintains that "concurrently adopted, conflicting endorsements must be construed in favor of the insured." (Dkt. 53 at 16). In support of this argument, Castle Hill cites only a New York state court decision and a decision from the Western District of Washington. (*Id*.). The facts of this case would not run afoul of this supposed doctrine even under Castle Hill's own articulation of the doctrine. Castle Hill argues that the doctrine must be applied when "there is no basis for favoring one endorsement over another endorsement." (*Id*. (quoting *Syracuse Univ. v. Nat'l Fire Ins. Co. of Pittsburg, Pa.*, 975 N.Y.S.2d 370 (table), 2013 WL 3357812, at *2 (N.Y. Sup. Ct. 2013))). But here, there *is* a basis for finding that the advertising injury exclusion trumps the other endorsements and exclusions, as the advertising injury exclusion alone includes specific language noting that the exclusion supersedes any conflicting provision.

11

Third, Castle Hill contends that, in accordance with the "drafting exclusions burden" doctrine, the Court must construe the advertising injury exclusion against Hanover because 1) Virginia law generally holds that exclusions are to be construed against the insurer; and 2) the advertising injury exclusion is "bafflingly vague" and "drafted so poorly." (Dkt. 53 at 17). This argument fails. To be sure, "[l]anguage in a policy purporting to exclude certain events from coverage will be construed most strongly against the insurer" under Virginia law. *TravCo Ins. Co.*, 736 S.E.2d at 325. But this interpretive canon is not alone sufficient to transform an otherwise clear insurance policy into an ambiguous one, nor is it a mandate that courts must blindly construe even clear, reasonable exclusions against the insurer. Moreover, although Castle Hill lodges many complaints about the exclusion's vagueness and "sloppy and ambiguous drafting," (dkt. 53 at 17), the advertising injury exclusion's meaning and effect are clearly stated: the exclusion amends Section II of the base policy to remove "personal and advertising injury" coverage from the policy's ambit and supersedes "any provision to the contrary." (Dkt. 41-7).

### IV. CONCLUSION

"Reasonable policy exclusions not in conflict with statute will be enforced; to be effective, the exclusionary language must clearly and unambiguously bring the particular act or omission within its scope." *Floyd v. N. Neck Ins. Co.*, 427 S.E.2d 193, 196 (Va. 1993). Given the advertising injury exclusion's clear language removing personal and advertising injury coverage from the businessowners policies and preempting any contrary provision, the Court finds that the businessowners policies do not cover personal and advertising injury. Accordingly, the Court will grant Hanover's motion for partial summary judgment and deny Castle Hill's cross-motion for partial summary judgment. Hanover has no duty to indemnify Castle Hill in the underlying action under the businessowners policies for damages stemming

from personal or advertising injury.

An appropriate accompanying order will issue.

Entered this ___8th___ day of July, 2019.

                                            NORMAN K. MOON
                                            SENIOR UNITED STATES DISTRICT JUDGE